(47 App. Div. 327.)

WILSON et al. v. F. C. LINDE CO.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. WAREHOUSEMEN—INJURY TO GOODS—CONFLICTING EVIDENCE—QUESTION FOR JURY.
    Where plaintiffs sued for injuries to apples placed in defendant's cold storage, which plaintiffs claimed arose from failure to maintain a proper temperature, which they claimed should have been from 30° to 32°, while defendant claimed that the apples were frozen when delivered to it, and that the proper temperature was from 32° to 37°, the question of defendant's liability for the damaged condition of the apples should have been submitted to the jury.

2. WITNESSES—EXPERTS—COMPETENCY—OPINION.
    Where a produce dealer testified that he had been in the apple business for 10 or 15 years, had worked in cold-storage warehouses for three seasons, and knew the temperature required to keep apples properly, he was competent to give his opinion as to the proper temperature required, and what had caused injury to apples alleged to have been damaged in cold storage.

3. SAME.
    On an issue as to the proper temperature required to keep apples in cold storage, it was error to exclude an expert's answer to a question "if he knew, up in the country, what temperature apples required," that 30° to 32° was the proper temperature to keep apples in cold storage; since such temperature did not vary in different places.

Appeal from trial term, Kings county.

Action by J. Victor Wilson and another against the F. C. Linde Company. From a judgment dismissing plaintiffs' complaint, and awarding judgment for defendant on a counterclaim, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

William E. Warland, for appellants.

Edward S. Clinch, for respondent.

HATCH, J. The purpose of the action was to recover damages claimed to have been sustained by reason of the negligence of the defendant in failing to properly keep in cold storage 1,065 barrels of apples. The counterclaim averred in the answer by the defendant sought to recover the cost of the storage of the apples. Upon the trial, at the close of the proof, the court directed judgment, dismissing the complaint, and upon the defendant's motion directed judgment in its favor upon its counterclaim. We do not think this judgment can be sustained. The evidence given upon the trial presented clearly and distinctly a question of fact upon two issues. Upon the part of the plaintiffs, evidence was given tending to show that they shipped to the defendant the apples which are the subject of controversy, and that, after they were received by the defendant, the plaintiffs made an examination of six or eight barrels in the storage room, and found the apples to be in good condition. Upon the part of the defendant it was claimed, and evidence was given tending to establish, that the apples, when delivered to the railroad company for transportation, were frozen, and that when they were received by the defendant they were in a damaged condition. This testimony, however, did not embrace all of the apples which were shipped, and, so far as one car load was concerned, no evidence was given by the defendant that they were in a damaged condition when received. The testimony bearing upon the condition of the apples when received by the railroad company for transportation was conflicting, and upon the part of the plaintiffs evidence was given tending to establish that the apples were not then frozen, but in good condition. Upon this state of the proof a question of fact was presented for solution by the jury as to whether the damaged condition of the apples, when they were removed from the cold storage, was the result of their freezing in transportation, or arose by reason of the failure of the defendant to maintain a proper temperature for their preservation. Evidence was given by Victor Wilson, one of the plaintiffs, to the effect that he had a conversation with the agent of the defendant, in which it was agreed that the apples should be kept by the defendant in a temperature from 30° to 32° above zero. It was conceded by the defendant that the temperature in fact varied from 32° to 37°, as shown by the daily register of such temperature, and at no time while the apples were in storage did it go as low as 30°. Upon this question the plaintiffs' testimony tended to establish that from 30° to 32° temperature was essential for the proper preservation of the apples, and that the failure to maintain it at that point created the damaged condition in which the apples were found when they were removed. Upon the part of the defendant this testimony was controverted, and the claim was made that the temperature as maintained was proper, and would preserve the apples from damage. On this question, therefore, an issue was presented which was for the jury.

We also think that error was committed in the ruling by the trial court upon the question of evidence. Plaintiffs called as a witness Carlton F. Bells, whose business was that of a produce dealer in Rochester, and who saw one car load of these apples at the time of shipment. Subsequently he was engaged to repack the apples in defendant's storeroom, and he testified that when he visited the storeroom at different times he found the temperature ranging from 35° to 37°. He was asked the following questions: "Do you know what temperature is required for apples from experience in the business? A. I suppose I do; yes, sir. From my business knowledge, I should say I do. Q. How long have you been in the apple business? A. From ten to fifteen years." He was then asked: "Have you had experience in storing apples in cold storage? A. Some. Q. As the result of that experience, what do you say is the proper temperature to keep apples in cold storage?" Objection was made to this testimony upon the ground that witness was not shown to be competent, and the objection was sustained. He was further asked if he had noticed the pipes contained in cold-storage warehouses. Objection was made thereto, and sustained. He was then asked again what experience he had in cold-storage warehouses, and answered that he had been in them three different seasons. He was then asked: "What has been the result? Do you know the proper temperature of a cold-storage warehouse?" This was objected to, and the objection sustained. "Q. Judging from your experience in the cold-storage business, what was the cause of the damage to these apples?" Upon objection the answer was excluded. We think this testimony was competent. The witness was shown to have had knowledge upon the subject to which his attention was directed. The question presented was one on which the expression of an opinion was proper, and bore directly upon the issue. Ferguson v. Hubbell, 97 N. Y. 507; Young v. Johnson, 123 N. Y. 226, 25 N. E. 363; Schwander v. Birge, 46 Hun, 66. One Judson Snyder was called as a witness, and testified that he packed the apples, and that they were in good condition when packed, so far as was disclosed by opening one or two barrels out of a dozen or fifteen in the lot. He testified that he had handled apples more or less for 20 years, and had experience in cold storage. He was asked by the court: "Did you know, up in the country, what temperature apples require? A. 30° to 32° is the proper temperature to keep apples in cold storage." This testimony was objected to, and stricken out upon the motion of the defendant. The evidence was clearly proper under the authorities already cited. What temperature was proper for the cold storage of apples would not vary in one place more than in another, and the witness was competent to testify upon the subject. The defendant subsequently gave evidence upon this point, and its agent testified that the proper temperature for the cold storage of apples was from 32° to 36°. This issue was, therefore, in the case, and the evidence which was excluded was competent, and bore directly upon it. Upon all the testimony the jury would have been authorized to find that the arrangement between the parties was to keep the apples in a cold-storage temperature ranging from 30° to 32°. As the defendant

concededly failed to maintain that temperature, the jury would have been authorized to say that the damaged condition of the apples resulted therefrom either in whole or in part. If they had so found, the plaintiffs would have been entitled to recover such damages as they sustained, and the defendant could take nothing under its counter-claim. It follows that the judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial granted; costs to abide the event. All concur.