Isaac P. Sutherland et al., Appellants, *v.* Albany Cold Storage and Warehouse Company, Respondent.

Warehousemen — Liability of Cold Storage Company for Failure to Maintain Temperature Requisite for the Preservation of Property Stored. A cold storage warehouse company, in the absence of an express agreement, impliedly undertakes to maintain the necessary temperature required for the preservation of property stored with it by its customers for the time the property remains stored; if its stock of ice is insufficient for that purpose, it should either replenish it or give timely notice to the customer to remove the property; if it fails to do either in the absence of circumstances charging the customer with knowledge of the situation, the company is liable for the damages resulting from a failure to maintain the requisite temperature.

*Sutherland* v. *Albany Cold Storage & Warehouse Co.*, 55 App. Div. 212, reversed.

(Argued May 9, 1902; decided May 20, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 16, 1900, affirming a judgment in favor of defendant entered upon the report of a referee.

The report of the referee contains specific findings of fact and conclusions of law in separate paragraphs, but are not separately numbered or the conclusions specifically stated as such as they should have been. The findings are as follows:

" That at all the times hereinafter mentioned the plaintiffs

were copartners in trade doing business at the city of Albany, N. Y., under the firm name and style of ' I. P. Sutherland & Co.'

" That during all of said times the defendant was and still is a domestic corporation and during said times was engaged in business at the city of Albany, N. Y., in storing eggs and other perishable property in cold or reduced temperature commonly called ' cold storage,' and had and kept a warehouse at said city for that purpose.

" That said warehouse consisted of two adjoining compart-' ments, one for the storage of eggs, and the other perishable property, herein termed the storage compartment, and the other for the storage of ice, herein termed the ice compartment, between which two compartments there were openings, through which openings the air from the said ice compartment passed into said storage compartment and therein produced and maintained a reduced temperature.

" That said warehouse and said compartments were well and properly constructed for the purpose for which they were intended.

" That said ice compartment had a capacity to hold, without being refilled, sufficient ice to maintain a temperature in said storage compartment of from 36 to 38 degrees Fahrenheit from March to the fore part of September, and of 38 to 52 degrees from the fore part of September to the middle of October

" That at the times the eggs hereinafter mentioned were stored in said storage compartment by the plaintiffs the same was substantially full of ice.

" That by the fore part of September, 1894, the ice in said ice compartment had, from natural causes, and not by reason of any negligence on the part of the defendant, largely melted and disappeared so that there was not enough ice therein to maintain the temperature in said storage compartment as low as 38 degrees Fahrenheit.

" That a temperature not to exceed 38 degrees Fahrenheit in said storage compartment was necessary to obtain the best

results in preserving eggs therein, and that that fact was then well known to both the plaintiffs and the defendant.

"That from about the first of September, 1894, the quantity of ice in said ice compartment continued, without fault of the defendant and from natural causes, to gradually diminish by melting, in consequence whereof the temperature in said storage compartments continued gradually to rise until prior to the 11th day of October, 1894, it had risen to at least 52 degrees.

"That on or shortly prior to the 15th day of September, 1894, the plaintiffs knew that the temperature in said storage compartment had risen several degrees above 38 degrees Fahrenheit, and that such rise in temperature was causing injury and damage to the eggs placed by them in said storage compartment, and then remaining therein as hereinafter set forth.

"That the evidence fails to establish that the defendant had ice with which to replenish the stock of ice in said ice compartment, or could obtain such ice, or what the cost thereof (if obtainable) would have been.

"That during the month of April, 1894, the plaintiffs, as such copartners, with the consent of the defendant, placed in said ice compartment for storage therein, 778 crates of eggs, each of which crates contained 30 dozens of eggs.

"That the evidence fails to establish that any express contract was made by or between the plaintiffs and defendant for the storage of said eggs, or fixing the compensation which should be paid therefor, or the length of time for which they should be stored or the temperature which should be maintained in said storage compartment.

"That by reason of the rise of the temperature in said storage compartment, as aforesaid, so many of said eggs as remained in said storage compartment between the fore part of September and the eleventh of October, 1894, were damaged, injured and depreciated in market value.

"That such damage, injury and depreciation amounted to many hundred dollars.

"That such damage, injury and depreciation continued in

an increasing ratio from said fore part of September until said eleventh of October, 1894.

" That the evidence fails to show how much of such injury, damage or depreciation occurred prior to the time when the plaintiffs had knowledge that the temperature in said ice compartment had risen above the point best fitted for the preservation of said eggs, to wit, about the middle of September, 1894, and how much thereof occurred thereafter.

" That from time to time in the months of September and October, the plaintiffs removed portions of said eggs from said storage compartment, and at all times were at liberty to do so without let or hindrance from the defendant.

" That the last of said eggs were removed from said storage compartment by the plaintiffs on the 11th day of October, 1894.

" That before any of said eggs were placed therein one of the plaintiffs examined said warehouse and ascertained the form and manner of its construction and the extent to which the ice compartment thereof was filled with ice.

" That the defendant owed no duty to the plaintiffs to replenish the ice in said ice compartment, or to maintain a lower degree of temperature in said storage compartment than could be maintained therein by the ice stored in said ice compartment at the time said eggs were placed in said storage compartment.

" That the evidence fails to establish that the defendant neglected the performance of any duty which it owed to the plaintiffs in the care or storage of said eggs by reason whereof said eggs or any of them were in any way injured, damaged or depreciated in value.

" That the plaintiffs are not entitled to recover judgment herein against the defendant for any sum whatever.

" That the defendant is entitled to recover a judgment herein against the plaintiffs, dismissing the complaint upon the merits.

" And, I therefore direct that judgment be entered herein accordingly."

*Judson S. Landon, J. S. Frost, S. J. Daring and L. C. Warner* for appellants. Upon the facts found by the referee and admissions in defendant's answer the judgment should be reversed. (*Roberts* v. *White*, 73 N. Y. 375.) The referee erred in holding "that the defendant owed no duty to the plaintiffs to replenish the ice in the ice compartment, or to maintain a lower degree of temperature in said storage compartment than could be maintained therein by the ice stored in said ice compartment at the time said eggs were placed in said storage compartment." (*Paige* v. *Willet*, 38 N. Y. 28; *Smith* v. *Coe*, 63 N. E. Rep. 57; *Ferris* v. *Hard*, 135 N. Y. 354; *Mygatt* v. *Coe*, 124 N. Y. 212; *Wilson* v. *L. Co.*, 47 App. Div. 327; *G. W. Co.* v. *Maxfield*, 8 Misc. Rep. 308; *Hyde* v. *M. R. Co.*, 144 Mass. 432; *Leidy* v. *Q. C. C. S. Co.*, 180 Penn. St. 323; *H. I. & C. S. Co.* v. *Jordan Co.*, 57 N. E. Rep. 575; *Hunter* v. *B. C. S. Co.*, 75 Minn. 408.) The defendant, as a mere bailee for compensation or hire, was bound to exercise a high degree of care, or, what is the same thing, is liable for ordinary negligence. (*Ouderkirk* v. *C. Nat. Bank*, 119 N. Y. 263; *Roberts* v. *Deposit Co.*, 123 N. Y. 57; *Jones* v. *Morgan*, 90 N. Y. 4; *Isham* v. *Post*, 141 N. Y. 100; *Price* v. *Ga Nun*, 11 Misc. Rep. 74.) The findings relied upon to excuse defendant's non-performance do not excuse or justify it. (*Herter* v. *Mullen*, 159 N. Y. 28; *Stewart* v. *Stone*, 127 N. Y. 500; *Harmony* v. *Bingham*, 12 N. Y. 99; *Dexter* v. *Norton*, 47 N. Y. 62; *B. & L. L. Co.* v. *B. Land Co.*, 165 N. Y. 247.) The referee erred in finding "That the evidence fails to establish that the defendant neglected the performance of any duty which it owed to the plaintiffs in the care or storage of said eggs by reason whereof (*i. e.*, neglect) said eggs, or any of them, were in any way injured, damaged or depreciated in value." (*Dale* v. *Brinkerhoff*, 7 Daly, 45; *E. Co.* v. *Leonard*, 22 Misc. Rep. 120; *Griggs* v. *Day*, 158 N. Y. 1; *Jerome* v. *Q. C. C. Co.*, 163 N. Y. 351; *Ostrom* v. *Greene*, 161 N. Y. 353; *O'Brien* v. *E. R. B. Co.*, 116 N. Y. 539.)

*Eugene D. Flanigan* for respondent. Under the issues raised by the pleadings that defendant conducted a summer

storage, and the found fact, which is harmonious therewith, the judgment should be affirmed. (*Mygatt* v. *Coe*, 124 N. Y. 12.) The facts found by the referee sustain the judgment dismissing the complaint. (*Marden* v. *Dorthy*, 160 N. Y. 39; *Dean* v. *Driggs*, 137 N. Y. 274; *Blanchard* v. *Ely*, 21 Wend. 342; *Griffin* v. *Colver*, 16 N. Y. 494; *White* v. *Miller*, 71 N. Y. 133; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Johnson* v. *Meeker*, 96 N. Y. 97; *Allen* v. *McConihe*, 124 N. Y. 342, 347; *Dodds* v. *Hakes*, 114 N. Y. 254.) The finding of fact "that the evidence fails to establish that the defendant neglected the performance of any duty, which it owed to the plaintiffs in the care or storage of said eggs, by reason whereof said eggs, or any of them, were in any way injured, damaged or depreciated in value," is conclusive upon this court. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Marden* v. *Dorthy*, 160 N. Y. 39, 45; *Hilton* v. *Ernst*, 161 N. Y. 226; *Krekeler* v. *Aulbach*, 169 N. Y. 372; *Willetts* v. *Hatch*, 132 N. Y. 41; *Ouderkirk* v. *C. N. Bank*, 119 N. Y. 263; *Clark* v. *N. S. & L. Bank*, 164 N. Y. 198; *Ruppert* v. *Brooklyn H. R. R. Co.*, 54 N. Y. 90, 93; *Constant* v. *University of Rochester*, 133 N. Y. 640; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Morris* v. *Talcott*, 96 N. Y. 100; *Shotwell* v. *Dixon*, 163 N. Y. 42.) There was no error committed by the referee in finding " that the defendant owed no duty to the plaintiffs to replenish the ice in said ice compartment, or to maintain a lower degree of temperature in said storage compartment than could be maintained therein by the ice stored in such storage compartment at the time said eggs were placed in such storage compartment." (*Knowles* v. *A. R. R. Co.*, 41 Am. Dec. 224; *Brown* v. *Hitchcock*, 28 Vt. 452; *Cowles* v. *Pointer*, 26 Miss. 253; *Aldrich* v. *B. R. Co.*, 108 Mass. 31; *Knapp* v. *Curtis*, 9 Wend. 60; 3 Am. & Eng. Ency. of Law [2d ed.], 742; 28 Am. & Eng. Ency. of Law [1st ed.], 648; *Lamb* v. *C. R. R. & T. Co.*, 46 N. Y. 271; *Russell* v. *N. H. S. Co.*, 50 N. Y. 121; *Heinmann* v. *Heard*, 62 N. Y. 448; *Whitworth* v. *E. Ry. Co.*, 87 N. Y. 413.) The findings and the issue as raised by the pleadings show that defendant performed its full duty to plain-

tiffs. (*Stewart* v. *Stone,* 127 N. Y. 500; *Dexter* v. *Norton,* 47 N. Y. 62; *Lorillard* v. *Clyde,* 142 N. Y. 456; *Worth* v. *Edmonds,* 52 Barb. 40; *B. L. Co.* v. *Belleview,* 165 N. Y. 247; *Spalding* v. *Roosa,* 71 N. Y. 40; *Clark* v. *Gilbert,* 20 N. Y. 279; *Jones* v. *Judd,* 4 N. Y. 411; *Wolfe* v. *Hours,* 24 Barb. 174; *Herter* v. *Mullen,* 159 N. Y. 28.)

Haight, J.  The defendant, being engaged in the keeping of a cold storage warehouse for the preservation of eggs and other perishable property, in the absence of an express contract, impliedly undertook to maintain the necessary temperature required for the preservation of such property as should be stored with it by its customers.  The required temperature for the preservation of eggs is about thirty-eight degrees Fahrenheit.  This was the temperature in the warehouse at the time the plaintiffs placed their eggs therein.  This temperature was maintained until about the first of September, when by reason of the melting of the ice in the compartment in the storehouse the temperature rose until it reached at least fifty-two degrees prior to the 11th day of October, at which date all of the eggs were finally removed.  The damages complained of resulted from this rise of the temperature in the storehouse and we think, under the findings of fact as made, the plaintiffs were entitled to recover damages.

The referee appears to have reached the conclusion that the defendant owed no duty to the plaintiffs to replenish the ice in the ice compartment or to maintain a lower degree of temperature than could be maintained by the ice stored at the time the eggs were placed in storage.  And also that the defendant neglected the performance of no duty which it owed to the plaintiffs in the matter.

We think these conclusions are not warranted by the facts as found.  The defendant had the care, custody and control of its warehouse and of the ice therein, and knew, or ought to have known, the amount of ice that remained in the compartment from time to time.  If at any time the ice had become melted and so reduced in quantity that the necessary tempera-

ture for the preservation of the property could not be maintained the defendant should have supplied more ice, or if this was impracticable, should have given timely notice to the plaintiffs to remove their property before they had suffered damages by its deterioration. It is true that the plaintiffs, or one of them, inquired as to the quantity of ice on hand before placing their eggs in storage and were advised that the compartments were then full, but it does not appear that the plaintiffs knew of the melting or wasting of the ice to such an extent as to injure their property until about the middle of September, when they entered the warehouse and found that the temperature had risen far above that required and that their eggs had commenced to deteriorate. Whether the plaintiffs could after that time have removed and disposed of their eggs sooner than they did is not found nor is it important to here determine, for they had at that time already suffered some damages without knowing that the temperature had been permitted to rise above the point that was required for the preservation of their property.

The defendant contends that, under the allegations of the complaint, the defendant undertook to furnish cold storage only during the summer months, and that, having furnished the requisite temperature until the first of September, it was no longer liable. The referee, however, has found as facts that there was no express contract as to the length of time for which the eggs should remain in storage. We must, therefore, assume that it was a continuing contract until it was terminated by one of the parties, either by the removal of the eggs by the plaintiffs, or notice to do so by the defendant.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT and CULLEN, JJ., concur; WERNER, J., absent.

Judgment reversed, etc.