Francis L. Valente, J.
The plaintiff, an importer of tapioca flour and seed, instituted this action to recover a money judgment from the defendants herein named. The claim in part arises out of the nondelivery of a portion o’f a cargo of tapioca imported from Brazil for the account of the plaintiff and in part for the loss of a number of bags of flour and seed stored for the plaintiff’s account with the Sealand Storage and Warehouse Corporation.
The case was tried before me without a jury and findings of fact and conclusions of law have been waived.
The defendants, Sealand Dock and Terminal Corporation and Sealand Storage and Warehouse Corporation, hereinafter respectively designated as the “Dock Co.” and “ Storage Co.”, are domestic corporations having common officers and occupying the same office space.
On November 17, 1951 and prior thereto, the Dock Co. was the lessee of several piers in the borough o'f Brooklyn, which it operated, maintained and controlled as a deepwater terminal for the receipt and discharge of merchandise from marine vessels. One of these piers was located at the foot of Huron Street, Brooklyn, New York, a part of which the Storage Co. *729 used to warehouse plaintiff’s tapioca flour and seed. Both the Dock Co. and the Storage Co. utilized the floor space of this pier interchangeably for the discharge of cargo and for warehouse purposes as convenience and space required and permitted.
On November 17, 1951, and at the times herein mentioned, the defendant Angf. A/B Tirfing, hereinafter referred to as “ Tirfing ”, was the owner and operator of the vessel M/S Bardaland, engaged in the carriage o'f merchandise on the high seas and the carrier of the cargo — the subject matter of the first cause of action — from the port of Itajai, Brazil, to New York.
The evidence reveals the aforesaid vessel carrying a quantity of tapioca flour for ultimate delivery to the plaintiff arrived in New York on November 11, 1951 and the Dock Co. was hired by the defendant Tirfing for the express purpose of unloading and discharging its cargo of tapioca flour. The discharge was accomplished between the 13th and 15th days of November, 1951 at the open India Street pier and transferred by the Dock Co. to the Huron Street pier. At the time there were in storage on said pier for the account of the plaintiff other bags of flour and seed — the subject o'f the second and third causes of action — for which appropriate warehouse receipt had been issued by the Storage Co. to plaintiff.
Some time during the night of November 16 and early morning of November 17, 1951 a portion of the Huron Street pier collapsed, precipitating into the East River 11,326 bags of tapioca flour stored thereon. Of this number 4,242 bags represented part of the cargo discharged from the Bardaland, and 7,084 bags part of the flour and seed previously warehoused with the Storage Co. for the account of the plaintiff.
Testimony adduced by witnesses established that the pier was built between the years 1906 and 1909; that it was a timber structure resting on rows of piles running the width of the pier; that it was 475 feet long on the north side, 430 feet long on the south side, and approximately 75 feet wide, with a wooden deck and a 25-foot high shed made o'f corrugated steel. The collapsed portion was approximately 120 feet by 40 feet located on the northerly or upstream side of the pier.
The amended complaint sets forth four causes of action upon which the plaintiff predicates its respective claims.
In the first cause of action recovery is sought against all of the defendants for nondelivery of 4,242 bags of the tapioca flour carried by the Bardaland; the second cause of action charges the Storage Co. with nondelivery — arising out of *730 negligence — of 7,084 bags of tapioca flour stored with the Storage Co. by the plaintiff; the third cause of action seeks recovery against the Dock Co. for nondelivery of the aforementioned 7,084 bags of tapioca flour arising out of negligence; and the fourth cause of action seeks recovery from the Storage Co. and Dock Co. for the cost of removal and restorage of the flour and seed which became exposed to the elements as a result of the collapse of the pier.
The defendant Tirfing, as part of its defense, prays that should it be found liable as a common carrier for nondelivery it be indemnified by the Dock Co., asserting that if any liability be imposed against it the same was occasioned by the negligence and carelessness of the Dock Co., and demands that the ultimate rights between it and the Dock Co. be determined pursuant to the provisions of section 264 of the Civil Practice Act.
Concerning the first cause of action as it pertains to the facts peculiar to this litigation, it has been satisfactorily established, and I find, that Tirfing failed to deliver 4,242 bags of tapioca flour, part of a shipment delivered to it in Brazil for transportation to New York. That the Bardaland was a common carrier and she and her owner were insurers of the safety of the goods (Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 437; The Ella Pierce Thurlow, 300 F. 103, 105, affd. 300 F. 106). I further find that at the time the pier collapsed the 4,242 bags of flour had been discharged onto the Huron Street pier by the Dock Co. hired for that purpose by Tirfing; that there was a six-day period of free time exclusive of Saturdays and Sundays in defendant Tirfing’s tariff; that at the time the pier collapsed the free period had not expired; the goods were still in transit and in Tirfing’s custody, the plaintiff not having taken delivery thereof, and that Tirfing’s responsibility as an insurer was still in existence.
There is no merit to Tirfing’s contention that there was constructive delivery of the flour carried by the M/S Bardaland. (Rosenstein v. Vogemann, 184 N. Y. 325.)
The defendant Tirfing is liable to the plaintiff for the nondelivery of the 4,242 bags of the tapioca flour and plaintiff is entitled to judgment against defendant Tirfing in the sum of $30,393.72, together with interest from November 17, 1951.
Concerning the second and third causes of action, considered jointly herein, the adduced evidence established that 7,084 bags of tapioca flour and seed were received by the Storage Co. from the plaintiff prior to November 17, 1951 for which warehouse receipts were issued, and that said bags of flour were destroyed by submersion in the East River as a result of the pier collapse.
*731 The gravamen of both of these causes of action is predicated in negligence and I am satisfied that the plaintiff has established by a fair preponderance of the evidence the negligence of both defendants.
It is conceded that the Dock Co. operated, maintained and controlled the Huron Street pier. Therefore, the duty was imposed upon it to keep and maintain said structure in a good and safe condition.
I find from all of the adduced testimony that the Dock Co. failed in this duty and that the sole proximate cause of the collapse of the pier was occasioned by such failure.
There is ample basis in the testimony and in the photographs submitted in evidence to justify the opinion offered by the plaintiff’s experts to the effect that the pier collapsed solely because of the rotted, defective and badly deteriorated condition of its supporting structure and substructure. This opinion was not overcome by the testimony offered by the defendants’ experts. The evidence offered by the defendants concerning the periodic inspections and repairs to the pier was neither impressive nor persuasive and finds no substantiation in the photographs in evidence. The contention of the Dock Co. that a lateral impact by unknown vessels caused the collapse of the pier finds little support in the believable testimony.
The failure of the defendant to take any steps to ascertain the identity of the vessels allegedly in contact with the pier and the absence of physical injury to the stringpieces of said pier strongly negate this contention. These omissions, coupled with the fortuitous discovery by the defendant of two longshoremen three to six months after the event who testified that a tug bumped into the pier shortly before its collapse, render the veracity of their testimony doubtful at best.
It is conceded that the Storage Co. operated and maintained warehousing facilities on the Huron Street pier. In that capacity it undertook to store and warehouse the plaintiff’s tapioca flour and seed. As such it owed a duty to this plaintiff to safely keep and store its merchandise and to provide safe and proper facilities for said storage (Buffalo Grain Co. v. Sowerby, 195 N. Y. 355, 358).
I find from the testimony that this defendant failed in this duty and that it had knowledge of the improper and inadequate maintenance of the pier, that it undertook to warehouse the plaintiff’s merchandise with such knowledge, and therefore is chargeable with negligence.
The defendants Dock Co. and Storage Co. are liable to the plaintiff for the nondelivery and loss of the said 7,084 bags *732 of flour of the value of $54,153.81, with interest from November 17, 1951, and plaintiff is entitled to judgment therefor against both defendants, with interest from November 17, 1951.
Concerning the fourth cause of action, I find the anticipatory-action on the part of the plaintiff in removing the remaining tapioca flour and seed from the damaged pier to prevent injury to it was incurred in an endeavor to minimize its damage and was a reasonable and necessary course of conduct under the existing circumstances. The plaintiff, however, is not entitled to repayment for the item of transportation of a part of this flour to its own plant. Since the custom of the trade is to pay storage for flour on a monthly basis in advance whether the storage be for a month or for a shorter period, plaintiff is entitled to be reimbursed for the expenses of restorage for a one-month period necessarily incurred as a result of the collapse of the pier, and judgment is awarded to the plaintiff against the Dock Co. and the Storage Co. in the sum of $3,092.10 for haulage and storage, with interest from the date of payment of these charges.
The evidence indicates that tapioca flour is not produced in the United States; it is all imported; and it is not dealt in widely or in the large quantities involved here.
Under these circumstances, on the question of value of the destroyed flour, I find the measure of damages to be the cost of replacing the lost bags by purchase in Brazil, plus expenses incident to its shipment and delivery to New York, which from the testimony I determine to be $.066343 per pound for flour of A grade ex-warehouse. The flour on the Bardaland was all grade A and the 4,242 bags that were lost weighed 467,595.66 pounds, which at $.066343 per pound amounts to $30,393.72.
With reference to the 7,084 bags consisting of 1,395 bags of grade B and 5,689 bags of grade A, using the same measure of damages the testimony indicates that flour in warehouse is worth more than flour landed on the dock at New York and still within free time ; that the additional value is $.005 to $.0075 per pound higher; and that grade A flour normally commands a premium of a quarter of a cent per pound more than grade B.
Of the 7,084 bags lost, I find from the testimony 1,395 bags amounting to 153,771 pounds were grade B of a value of $.067343 per pound, amounting to $10,355.40; and that 5,689 bags amounting to 627,098 pounds were grade B of a value of $.069843 per pound, amounting to $43,798.41, making in all a total of $54,153.81.
On the prayer for affirmative relief on behalf of Tirfing and the determination of the rights between it and the Dock Co. I *733 find that the loss of the 4,242 bags of tapioca flour was occasioned by the negligent acts and omissions on the part of the Dock Co. and Tirfing is hereby awarded judgment over against said Dock Co. for the amount recovered against Tirfing by the plaintiff.
The award of interest on the respective claims is justified, as a matter of right and as a matter of discretion by the trier of the facts. (See Civ. Prac. Act, § 480, as amd. by L. 1927, ch. 623; Flamm v. Noble, 296 N. Y. 262.)
The comprehensive and analytical briefs submitted by contending counsel were of considerable assistance to the court.
The clerk is directed to enter judgment in accordance with the foregoing. All motions not disposed of herein and upon which decision was reserved are denied. The parties are allowed 30 days’ stay and 60 days to make a case.
(Amended, February 20, 1956.)
Upon consent the decision was amended as follows: The sum of “ $31,021.70 ” may be substituted for “ $30,393.72 ” as the amount which plaintiff is entitled to recover against defendant Angf. A/B Tiering. The date of “ January 1, 1952 ” may be inserted in place of ‘ ‘ from the date of payment of these charges ” in that part of the court’s decision which refers to interest payment on plaintiff’s recovery of $3,092.10 against defendants Sealand Dock & Terminal Corporation and Sea-land Storage & Warehouse Corporation.