River Park Residences, LP, Petitioner-Landlord-Appellant, 
against
Richman Plaza Garage Corp., Respondent-Tenant-Respondent, -and- "John Doe" and "Jane Doe," Respondents.



Landlord appeals from a final judgment of the Civil Court of the City of New York, Bronx County (Paul L. Alpert, J.), entered on or about November 19, 2015, after a nonjury trial, in favor of tenant dismissing the petition in a holdover summary proceeding.




Per Curiam.
Final judgment (Paul L. Alpert, J.), entered on or about November 19, 2015, reversed, with $25 costs, and final judgment of possession granted in favor of landlord on the holdover petition. Execution of the warrant of eviction shall be stayed for 30 days after service of a copy of this order with notice of entry.
This commercial holdover proceeding is based upon allegations that tenant, an 800-car garage facility located in landlord's Mitchell-Lama residential complex, breached its lease by failing to "account to landlord" for increased parking charges collected from residential tenants (see River Park Residences, LP v Richman Plaza Garage Corp., 48 Misc 3d 129[A], 2015 NY Slip Op 50975[U] [App Term, 1st Dept 2015]). 
Paragraph 65(a) of the Rider to tenant's lease provides that tenant may request from DHCR an increase in the amount of parking charges collected from the residential tenants of the complex; that tenant shall pay to landlord as "additional rent" a sum equal to 25% of "any and all increases in parking charges to residential tenants," assuming a minimum of 400 spaces per month; and that "[t]enant shall account to landlord for any additional rent due on or before January 15th of the first anniversary of the commencement date and annually thereafter."
In September 2011, DHCR approved tenant's application for an increase in the monthly parking rate charged to residential tenants of nearly 80%, and that determination was upheld in an article 78 proceeding (see Matter of Richman Plaza Garage Corp. v New York State Div. of Hous. & Community Renewal, 112 AD3d 474 [2013]). In July 2013, landlord served a notice to [*2]cure, alleging that tenant failed to provide an accounting to landlord as required by the lease, so that landlord could determine the amount of additional rent to be paid. Prior to the expiration of the cure period, tenant sent landlord a package consisting of residential lease agreements, with the respective parking space number for each tenant. Landlord subsequently terminated the lease because tenant "failed to provide the accounting." A Yellowstone action commenced by tenant was dismissed as untimely.
Following a bench trial, Civil Court dismissed the holdover petition, finding that tenant did "account to landlord." The trial court concluded that because the language of the lease was vague as to the form of the accounting, predecessor landlord's [one-time] acceptance of a [similar] "package" of residential apartment leases constituted "past practice" of the parties' intent as to the form of the accounting. 
Based upon the evidence adduced at trial and in the exercise of our authority to render judgment warranted by the facts (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]), we reverse and award a possessory judgment to landlord. 
The lease required tenant to pay, as additional rent, a percentage of increases in parking charges collected by tenant. Furthermore, since tenant was the one that knew the amount of parking charges it was collecting, the lease required tenant to furnish an accounting, so that landlord could compute the amount of additional rent due. Tenant's submission to landlord, consisting of a package of residential leases that contained no information about the actual parking charges collected, was insufficient to support tenant's obligation to "account to landlord" (cf. One Hundred Grand, Inc. v Chaplin, 70 AD3d 513 [2010] [landlord's annual bills were sufficient to satisfy the lease provision requiring landlord to deliver to tenant "an accounting" of landlord's expenses prior to collecting additional rents]). Indeed, the plain meaning of the term "account" is referenced elsewhere in the lease agreement (paragraph 54[a]), which required tenant garage-operator to provide a "full accounting of all collections and expenses" to the landlord relating to initial garage parking arrears of underlying tenants. To interpret tenant's submission as compliant with the lease would "effectively render [] meaningless" the accounting provision of the contract (see Helmsley-Spear, Inc. v New York Blood Ctr., 257 AD2d 64, 69 [1999]), and preclude landlord from determining the amount of additional rent owed by tenant.
Nor did the predecessor landlord's acceptance of tenant's submission of similar documents on one prior occasion establish a course of conduct between the parties as to the form of the accounting (see Matter of Allstate Ins. Co. v Foschio, 93 AD2d 328 [1983]; compare Toys "R" Us- Delaware, Inc. v 44-45 Broadway Realty Co., LLC, 110 AD3d 521 [2013] [course of conduct established over 12 years without protest]; Murray Hill Mews Owners Corp. v Rio Rest. Assoc. L.P., 92 AD3d 453, 454 [2012] [course of conduct established over eight years without protest]). In any event, the broad "no waiver" provision of the lease precluded reliance upon any prior course of conduct (see Goldman v Manhattan Mini Stor. Corp., 225 AD2d 408 [1996]).
Tenant's breach of the lease having been firmly established, we award landlord the possessory judgment sought in the holdover petition.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: April 26, 2017